IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTELSAT USA SALES LLC,<br>    formerly known as Intelsat USA<br>    Sales Corp.,<br><br>        Plaintiff,<br><br>v.<br><br>JUCH-TECH, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CA No. 1:10-cv-2095(RC) |

**<u>PLAINTIFF/COUNTERDEFENDANT INTELSAT USA SALES LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY</u>**

Plaintiff/Counterdefendant Intelsat USA Sales LLC ("Intelsat"), formerly known as Intelsat USA Sales Corp., respectfully submits this reply memorandum in further support of its motion to compel discovery. Juch-Tech's Opposition makes no attempt to satisfy the requirements that the Federal Rules of Civil Procedure impose on litigants seeking to limit to discovery. In fact, notwithstanding its bluster, Juch-Tech's Opposition demonstrates that Juch-Tech has failed to produce discovery to which Intelsat is entitled, and that it has no cognizable defense for its failure. Intelsat's motion to compel should be granted.

    **I**. **Juch-Tech must produce the missing Bentley Walker communications**

Juch-Tech does not deny that it communicated with Bentley Walker about Anthony Walker's offer to provide favorable testimony to Juch-Tech in return for withdrawal of Juch-

1

Tech's litigation against Bentley Walker. Nor could Juch-Tech deny the existence of these communications, in light of Juch-Tech's Chief Legal Counsel detailed deposition testimony about Bentley Walker's offer and the ensuing negotiations, deposition and settlement. Pye Dep. at 10-32, Ex. F to Intelsat Motion to Compel, Dkt 170 ("MTC). Mr. Pye testified that he saw "multiple" written communications, including communications identifying the specific testimony that Juch-Tech wanted Bentley Walker to provide. Pye Dep. at 20-21, 27-30.

But, with the exception of two, two-page general releases, Juch-Tech produced no documents relating to these communications until faced with Intelsat's Motion to Compel. Even after the motion, Juch-Tech has produced only a handful of responsive communications.[1] Most of the communications that Mr. Pye testified he received have never been produced. Nor have the Bentley Walker settlement documents, again except for four pages of releases.

Intelsat has shown that the missing documents are responsive and relevant. MTC at 3-11. Juch-Tech makes no pertinent response. Its contention that Mr. Walker's testimony is not that important to its case, JT Opp. at 2, is untenable: Mr. Walker is Juch-Tech's key witness, see SAC ¶¶ 39-40.[2] It is also irrelevant.[3] Juch-Tech's previous production of other Bentley Walker documents (JT Opp. at 2) of course does not excuse its failure to produce the responsive, highly

---

[1] A sample of these emails are attached as Exhibit A hereto.

[2] In one of the few responsive communications that Juch-Tech produced in response to Intelsat's motion, Juch-Tech's counsel wrote that Juch-Tech wanted Mr. Walker available to testify at the Intelsat trial, if needed, as a condition of settlement. Feb. 3, 2015 email, Ex. A. Juch-Tech cannot seriously maintain that negotiations between Mr. Walker and Juch-Tech as to what his testimony would be -- and what consideration Juch-Tech would provide in return for such testimony-- are not directly relevant to the credibility of both Mr. Walker and Juch-Tech.

[3] Juch-Tech's version of the "facts" has changed so many times that even its counsel cannot keep them straight. Juch-Tech now contends that it is beyond dispute that Intelsat falsely represented to Juch-Tech that Bentley-Walker was a "current customer." JT Opp. at 2-3. In fact, this "misrepresentation" has never been alleged by Juch-Tech before in any of the three versions of Juch-Tech's counterclaims, because no one – not even Bentley-Walker – has ever claimed, at any time in the five years this case has been pending, that Bentley-Walker was not a current customer of Intelsat Corporation at the time the Transition Agreement was signed.

relevant communications about which Mr. Pye testified.[4]  Nor, contrary to Juch-Tech's suggestion (JT Opp. at 1 n.2), has Intelsat invented the missing documents.  Juch-Tech testified, at length, that they exist.  Pye Dep. at 20-22, 27-30.

In fact, Juch-Tech <u>admits</u> that it intentionally withheld the documents at issue: "Juch-Tech has located communications involving the Bentley Walker issue from the files of in-house counsel for Juch-Tech, which Juch-Tech maintains are privileged." JT Opp. at 3.[5]  But merely labelling documents privileged is no defense.  A party who withholds documents as privileged must demonstrate that the privilege applies.  *FTC v TRW, Inc*., 628 F.2d 207, 213 (D.C. Cir. 1980).  Juch-Tech does not come close to satisfying this burden.  Indeed, Juch-Tech has made no effort to meet its obligation.  It has not described the withheld documents and the basis for its assertion of privilege on a privilege log, as required by Rule 26.  In fact, it has not provided a privilege log. [6]  Nor has Juch-Tech provided Intelsat or the Court with *any* information to evaluate the privilege claim.  Where, as here, the party claiming privilege has not provided with the Court "with sufficient facts to state with reasonable certainty that the privilege applies," it has

---

[4] As part of this diversionary tactic, Juch-Tech opens its Opposition with a supposed Intelsat "represent[ation] to this Court" that Intelsat never made. JT Opp. at 1. Intelsat's motion is very clear that the Bentley Walker communications it seeks to compel are communications about Mr. Walker's offer to provide favorable testimony to Juch-Tech, the Bentley Walker deposition and the Bentley Walker settlement.  MTC at 4, 11; *see id*. at 1-11. Contrary to Juch-Tech's red herring, <u>none</u> of these missing communications are deposition exhibits because <u>none</u> were produced prior to the depositions.

[5] Undoubtedly, Juch-Tech's counsel in the Connecticut case and previously in this case, Mr. Lowry, has many of these same documents, as well as other non-privileged communications.  His responsive documents should also be produced.

[6] Juch-Tech attempts to blame its former D.C. counsel's lack of cooperation for its failure to produce a privilege log.  But the Bentley-Walker communications are in the possession of Mr. Pye, Juch-Tech's in-house lawyer, and/or of Mr. Lowry, its Connecticut lawyer.  Juch-Tech's current counsel produced some documents from these files and withheld others. Yet no privilege log for even these documents has been produced, despite the fact that these documents have at all times been in Juch-Tech's possession and were specifically demanded over two months ago.  The conclusion that must be drawn is that the documents are not privileged at all, and Juch-Tech is not willing to produce them due to their contents.

not met its burden, and the documents must be produced. *TRW* at 213.

The missing communications are in any event not privileged. Attorney client privilege protects <u>confidential</u> <u>client</u> information communicated for the purpose of seeking legal advice. *Brinton v. Department of State*, 636 F.2d 600, 603-04 (D.C. Cir. 1980). The privilege does not apply to facts from third parties conveyed by an attorney to his client, or to facts conveyed by the client to his attorney for communication to third parties. *Id.; United States v. Singhal,* 800 F. Supp.2d 12, 15-16 (D.D.C. 2010) ("If the information is or has been or is later shared with third parties, the [attorney-client] privilege does not apply.") (*quoting Mead Data Central, Inc. v. U.S. Dep't of Air Force,* 566 <u>F.2d</u> 242, 253 (D.C. Cir. 1977). It most certainly does not extend to communications between Juch-Tech's attorneys and Bentley Walker's attorneys.

Nor does the fact that the communications were sent to Juch-Tech's in-house counsel imbue them with privilege. "A corporate client should not be allowed to conceal a fact by disclosing it to a corporate attorney." *Neuder v. Batelle Pacific NW Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2010) (*quoting SEC v. Gulf & Western Indus*., 518 F. Supp. 675, 681-82) (D.D.C. 1981)). [7] The missing Bentley Walker communications must be produced.

### II. Juch-Tech must produce a knowledgeable 30(b)(6) fact witness

Juch-Tech does not dispute that Juch-Tech failed to provide testimony required by Intelsat's 30(b)(6) notice. *See* MTC at 13-14 (partial list of questions that Mr. Juchniewicz failed to answer). Indeed, the deficiency with respect to the financial information underlying Juch-Tech's rescissory damages claim was so striking that counsel for Juch-Tech repeatedly

---

[7] Juch-Tech does not respond to Intelsat's motion that Mr. Pye should be compelled to respond to questions that he improperly declined to respond to on the grounds of privilege; any objection is therefore waived. In any event, the questions do not call for privileged information for the reasons explained in the text.

volunteered to designate a better witness. Juch-Tech 30(b)(6) Transcript at 84, 293, 294-95.

Nonetheless, Juch-Tech now seeks to evade its obligation to produce a 30(b)(6) witness or witnesses who are "thoroughly educated about the noticed deposition topics with respect to any and all facts known to [the corporate deponent] or its counsel." *In re Vitamins Antitrust Litig.,* 216 F.R.D. 168, 172 (D.D.C. 2003). *See* discussion in MTC at 13-14; Fed. R. Civ. P. 30(b)(6). The 30(b)(6) designee need not be a corporate officer or employee. But he must "consent to testify on [Juch-Tech's] behalf," and he must be prepared to testify not only about matters within his personal knowledge, but also about matters about which the corporation has knowledge. *McKesson Corp. v. Republic of Iran,* 185 F.R.D. 70, 79 (D.D.C. 1999); *see* Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization.").

Juch-Tech has failed to make the required supplemental designation. Tossing around names (with arbitrary conditions) does not satisfy its obligation. Mr. Hyde, Juch-Tech's former CFO, for example, has not consented to testify on Juch-Tech's behalf of Juch-Tech, as required by the Rule, and thus cannot be the designee. *See* JT Opp. at 5 (purporting to offer Mr. Hyde, "subject to his cooperation"). While Juch-Tech occasionally mentioned Mr. Milnes, its current outside accountant, as a possible 30(b)(6) witness, it never offered to produce him – or anyone -- until after Intelsat was forced to file this Motion. But Mr. Milnes apparently refuses to appear in Alexandra, Virginia, the site of the 30(b)(6) deposition—a deposition originally noticed on May 29 and held on June 22, but which had to be continued because Juch-Tech's corporate designee was not prepared to testify as to the topics listed. Juch-Tech failed to timely object to the 30(b)(6) Notice, and cannot now impose conditions on the deposition.

Juch-Tech's argument that it need not produce a 30(b)(6) witness because its expert can

supply the missing facts is specious.  The expert has not agreed to represent Juch-Tech as a 30(b)(6) fact witness.  Nor could the expert do so while claiming to be an independent expert.  Rather, the expert has opined based on facts, data, and documents supplied by Juch-Tech, s*ee* Juchniewicz 30(b)(6) Dep. at 212 (MTC Ex. H), about which facts, data, and documents Juch-Tech's 30(b)(6) designee could answer no questions.  *See* MTC at 14-15.

As set forth in its motion, Intelsat is entitled to 30(b)(6) testimony setting forth Juch-Tech's view of its damages, particularly the creation of, source, and accuracy of the essential accounting data and spreadsheets that Juch-Tech expert adopted in toto with respect to its claim for rescissory damages.  *See In re Vitamins*, 216 F.R.D. at 173 (requiring 30(b)(6) testimony regarding facts that formed the basis for timeline prepared by counsel).  As *In re Vitamins* makes clear, the knowledge of the employees (or former employees) of a corporation is imputed to the corporation.  Juch-Tech cannot claim not to have a witness who can testify to that knowledge. *Id.*  Juch-Tech should be compelled to designate a properly-prepared 30(b)(6) witness for deposition in Alexandria, Virginia, or to dismiss its rescissory damages claim.

### III. Juch-Tech must provide documents relating to the building expenses it claims and must comply with the Notice of Inspection

Juch-Tech first announced on April 15, 2015, in its expert report and supplemental interrogatory answers that it was claiming as part of its damages the construction cost of a building.  Later, deposition testimony and documents showed that building is owned by another of Mr. Juchniewicz's companies, Hamilton Teleport, and construction began months before the Transition Agreement was ever executed.  If Juch-Tech continues to maintain that Hamilton Teleport's building is part of its damages, and was caused by Intelsat, it must produce all

documents relating to the building and documents regarding the financial arrangements between these two companies. Intelsat is entitled to the plans, permits, and other documents relating to the construction performed on the premises, and documents relating to the financial arrangements between Juch-Tech and Hamilton. MTC at 17-19. Aside from claiming, irrelevantly, that it had produced construction invoices, Juch-Tech did not respond to this portion of Intelsat's motion, which should therefore be deemed conceded.[8]

Juch-Tech likewise provides no legitimate basis for its refusal to allow Intelsat's noticed inspection of its premises. Intelsat served a notice of inspection under Rule 34 to "enter, inspect, measure and photograph Juch-Tech's premises and buildings." *See* Notice of Inspection, attached as Exhibit L to MTC. Juch-Tech did not object.[9] Nonetheless, Juch-Tech refused to allow Intelsat to enter, inspect and photograph Juch-Tech's premises and buildings. Rather,

---

[8] After this Motion was filed, Juch-Tech belatedly produced a single document, a "commercial lease" purporting to be dated January 1, 2009, between Hamilton Teleport and Juch-Tech. The witnesses to the lease are Mr. Hagan and Mr. Szkarlat, whose depositions have already been taken and now cannot be asked about this "lease." Unfortunately for Juch-Tech, the "lease" was downloaded from an Internet website, LawDepot.com, and contains a copyright notice from 2011. *See* signature page, attached as Exhibit B hereto. Thus, this lease was actually signed sometime in 2011 or later, not on January 1, 2009 as the lease purports. As noted in Intelsat's Opposition to Juch-Tech's Motion to Compel, p. 9, n. 9, the rent under this backdated lease was over five times the actual amount of rent recorded in Juch-Tech's accounting records, and was retroactively inserted in Juch-Tech's 2012 accounting database sometime after September 30, 2010. There is therefore another lease Juch-Tech is withholding, the actual lease between Juch-Tech and Hamilton.

[9] Juch-Tech's account of the manner in which the July 1 inspection came about is fictional. The Notice of Inspection was noticed for June 30, "or such date as counsel shall agree" at a time when the dates of the Canadian witness depositions were in flux. *See* emails attached as Exhibit C. To accommodate the third party witnesses' availability and requests, Mr. Hagan's deposition was moved to June 30. See email attached as Exhibit D. The week prior to the Canadian depositions, counsel for the parties engaged in several telephone discussions about moving the inspection to July 1 given the anticipated length of the Hagan deposition, and agreed to the inspection taking place on the 1st. Counsel for the parties confirmed that the inspection would take place on Wednesday, July 1 in several emails between June 26 and June 28. *See* emails attached as Exhibit E hereto. It would not be productive to engage in debate about Juch-Tech's personal attacks against undersigned counsel. Nonetheless, undersigned counsel viewed the scheduling discussions as cordial, professional, and uncontroversial, and was truly surprised at Juch-Tech's refusal to permit the inspection to proceed. No one who was present at these discussions would recognize the description set forth in Juch-Tech's Opposition.

Juch-Tech limited the inspection to the building (more precisely the portion of one building) that it considered relevant.  *See* JT Opp. at 8; MTC at 19.

This refusal was improper.  If Juch-Tech believed that only the unfinished portion of the NOC was relevant to this litigation, it was required to object <u>in writing</u> to the remainder of the Notice within 30 days.  Fed. R. Civ. P. R. 34(b)(2)(B); 34(b)(2)(C) ("objection to part of a request must specify part and allow inspection of rest").  Juch-Tech did not comply with this procedure, and thereby waived objection.  It may not now assert its subjective view of relevance as a defense.

Moreover, the buildings and premises from which Intelsat was barred <u>are</u> relevant. Chester Szkarlat, who was Juch-Tech's VP of operations during the construction at issue, testified that he was familiar with the invoices that Juch-Tech has claimed as damages in this case (Exhibit 28 to the deposition), and that they were for the construction of Building 3, the finance and administration building, <u>not</u> for the incomplete addition to Building 1, the NOC. Szkarlat Dep. at 87-90, 169-71 (attached hereto as Exhibit F).[10]  Intelsat is entitled to explore whether the construction expenses on which the expert relied are in fact expenses attributable to the March 2009 agreements, and it is entitled to inspect the premises to aid its investigation, whether or not Juch-Tech views them as relevant.

---

[10] While Juch-Tech points to testimony where Mr. Szkarlat notes that the list of construction expenses does not specify the construction involved, it ignores the testimony where he stated that he was certain that the expenses pertain to the Administration Building (Building 3). See Szkarlat Dep., Ex. F.  Ironically, Juch-Tech supports its contention that only the unfinished NOC is relevant with an affidavit by Mr. Pye, who did not join Juch-Tech until 2013, but who purports to swear on personal knowledge about construction that took place in 2008 and 2009, before Mr. Pye joined Juch-Tech and when Mr. Szkarlat was in charge of operations.

**Conclusion**

For the reasons set forth herein and in Intelsat's motion papers, and based upon the record and proceedings in this action, Intelsat respectfully requests that the Court issue an order pursuant to Fed. R. Civ. P. Rule 37 compelling Juch-Tech (1) to produce immediately (a) all documents and communications relating to Bentley Walker's offer to provide testimony for Juch-Tech, (b) all documents and communications relating to Mr. Walker's deposition, and (c) all documents relating to the proposed settlement between Juch-Tech and Bentley Walker, including the settlement agreement and any documents relating to or memorializing any side agreements; (2) to designate a knowledgeable, prepared 30(b)(6) witness(es) for deposition about Item Nos. 2, 5, 9, and 14 of the 30(b)(6) Notice; (3) to produce all documents relating to the financial arrangements between Hamilton Teleport, Inc. and Juch-Tech, and all documents relating to the construction of the building Juch-Tech claims as part of its damages, and to allow the site visit, at Juch-Tech's expense, required by Intelsat's notice of inspection, or to drop its damages claims relating to building improvements; (4) to produce Mr. Pye for deposition to answer questions about his communications with outside counsel regarding the Bentley-Walker deposition; and (5) to produce a log in accordance with Rule 26 identifying all documents withheld on grounds of privilege.  Intelsat further requests that the Court extend the discovery period for the limited purposes described herein, impose sanctions in the form of Intelsat's attorneys' fees and costs for this motion, and grant such other and further relief as to the Court seems proper.

INTELSAT USA SALES LLC
By Counsel

_____/s/_____
David I. Bledsoe
Bar No. 422596
600 Cameron Street
Suite 203
Alexandria, VA 22314
703-379-9424
703-684-1851 (fax)
bledsoelaw@earthlink.net

## CERTIFICATE OF SERVICE

I certify that on August 28, 2015, a copy of the foregoing was served by ECF upon:

Todd A. Murray, Esq.
William Stewart, Esq.
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas TX 75201

Geoffrey T. Hervey
Bregman, Berbert, Schwartz & Gilday, LLC
Suite 800 West
7315 Wisconsin Avenue
Bethesda, MD 20814

_____/s/_____
 David I. Bledsoe
Bar No. 422596
600 Cameron Street
Suite 203
Alexandria, VA 22314
703-379-9424
703-684-1851 (fax)
bledsoelaw@earthlink.net